JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JAMES B. MORAN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2613 | **DATE** | Jun 13, 2003 |
| **CASE TITLE** | Ernest Morris (IDOC #N-34658) v. Ernesto Velasco, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Following initial review of the complaint as required by 28 U.S.C. § 1915A, the complaint is dismissed without prejudice. Plaintiff may file an amended complaint in accordance with the instructions in the memorandum opinion and order, within thirty days of the date of this order. If plaintiff fails to comply with this order, this action may be dismissed with prejudice. Although plaintiff has not filed a change of address, IDOC records indicate that he is at Menard Correctional Center. The clerk shall send a copy of this order to the plaintiff at Menard Correctional Center.

*James B. Moran*

(11) ■ For further detail see order attached to the original minute order.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERNEST MORRIS,           )
                         )
    Plaintiff,           )
                         )
    v.                   )   No. 03 C 2613      DOCKETED
                         )
ERNESTO VELASCO, et al., )                      JUN 1 6 2003
                         )
    Defendants.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ernest Morris filed this suit under 42 U.S.C. § 1983 against employees of the Cook County Department of Corrections (CCDOC), complaining that the conditions of his confinement in the Cook County Jail violated the Constitution. Morris is permitted to proceed without prepayment, although, because he was in custody when he filed this suit, the Prison Litigation Reform Act (PLRA) requires that he pay the full filing fee. A separate order shall assess the initial partial filing fee required by 28 U.S.C. § 1915(b)(1) and instruct correctional officials to collect installment payments.

Another provision of the PLRA, 28 U.S.C. § 1915A, requires the court to review complaints filed by prisoners against governmental entities or their officers or employees prior to service, and dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. In determining whether the complaint states a claim upon which relief may be granted, the court accepts the allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Wynn v. Southward*, 251 F.3d 588, 591-92 (7th Cir. 2001). As explained below, Morris's complaint does not state a claim for violation of his constitutional rights. Nevertheless, because Morris may be able to do so by pleading additional facts, he will be permitted to file an amended complaint.



## MEDICAL CARE

Morris alleges that he is an insulin-dependent diabetic, and that between June 4, 1999 and June 7, 2000, medical staff at the Jail denied him insulin injections and placed him on oral medications suitable for a non-insulin dependent diabetic. Unnecessary suffering or damage to a detainee's health that results from jail officials' deliberate indifference to his serious medical needs is considered unauthorized punishment in violation of the Fourteenth Amendment. *See, e.g., Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002); *Chavez v. Cady*, 207 F.3d 901, 904 (7th Cir. 2000). Nevertheless, a two-year statute of limitations applies to § 1983 suits arising in Illinois, *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001), making this claim untimely.

Morris alleges that on January 18, 2002, he was injured when he fell down several steps while shackled and handcuffed, and suffers from limited movement in his right arm and pain in his back. Morris states that as of December of 2002, "the medical attention I should receive I don't even get. I've seen the Orthopedic three times, and the physical therapist three times as well. Within one year." Near the end of the complaint, Morris states that "I need medical treatment that I'm still being denied."

Morris does not allege that his injury was anything other than an accident, so the injury itself creates no constitutional claim. *Daniels v. Williams*, 474 U.S. 327 (1986). Denial of medical care can give rise to a constitutional claim, but poor medical care, even negligent medical care amounting to malpractice, does not in itself violate the Constitution, because the Constitution only forbids unauthorized *punishment*, the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)(quoting *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976)). Denial of medical care violates the Constitution only when it is the result of "deliberate indifference" --- the knowing, conscious disregard of an excessive risk to a prisoner's health or safety. *Wynn*, 251 F.3d at 593 (*citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Morris does not allege what treatment he believes he needed; more importantly, he does not allege who was responsible for denying it. Claims under § 1983 are brought against "persons" who have deprived the plaintiff of a right secured by the Constitution or federal law; they are not indistinct clouds of potential liability hovering over correctional institutions.

If Morris believes someone was deliberately indifferent to his need for treatment but does not know his or her name, he may submit an amended complaint naming as one defendant a supervisory official, such as the institution's medical director, while naming each defendant whose name is unknown as a "John (or Jane) Doe." The amended complaint should describe each such defendant and his or her responsibilities, and state why Morris believes such person was deliberately indifferent to his need for treatment and how it has harmed him. Although a supervisor is not liable under § 1983 for a subordinate's conduct unless he or she was personally involved, *Boyce*, 314 F.3d at 888, if Morris's allegations indicate that it is likely that his constitutional rights were violated by an unknown subordinate, this suit may proceed against the supervisor so that Morris may use pretrial discovery to learn who was actually responsible. *See Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 789-90 (7th Cir. 1995).

## RESTRICTIVE CONDITIONS

Morris complains of the restrictive conditions of his confinement as a "Special Incarceration" (S.I.) detainee, and states that he was the only one in this category who was a pretrial detainee. He alleges that from June 15, 2000 through January of 2002 he was confined to his cell 23 hours per day and required to take his recreation time at the same time as his cellmate. Morris complains he was "treated like a dog" and had "absolutely no privileges at all." Morris also complains of being subjected to 3-5 "shakedowns" (cell searches) per week since August of 2001, and of being handcuffed and shackled whenever he was moved. Morris's time in the law library was limited to an hour and a half per week, and a court order to give him additional time was ignored.

Taking the last claim first, a state official's failure to obey a state-court order does not violate the Constitution. Although prisoners have a constitutional right of access to the courts, restricting Morris's access to the law library could violate that right only if he suffered some detriment as a consequence, *Lewis v. Casey*, 518 U.S. 343, 350-54 (1996); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000), and Morris alleges none.

With respect to Morris's confinement in his cell for 23 hours per day and lack of privileges, Morris may be able to state a claim. These restrictions and deprivations are not necessarily

unconstitutional. The relevant question is whether they amounted to punishment, since a pretrial detainee may not be punished without due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979); *May*, 226 F.3d at 884.

Confinement in one's cell and loss of privileges are common punishments in correctional institutions, but are not necessarily punitive. A prisoner in protective custody may be confined to his cell for his own protection, for example, and certain privileges may be unavailable to a class of prisoners for administrative reasons unrelated to punishment. *See Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). Nevertheless, correctional officials may not arbitrarily restrict a detainee's limited liberty and avoid the obligations of due process simply by claiming that the detainee is not being punished. Restraints not expressly imposed as punishment may nevertheless be considered to be punishment if they are not rationally related to a legitimate non-punitive governmental purpose or if they appear excessive in relation to the purpose they allegedly serve. *Wolfish*, 441 U.S. at 538-39; *May*, 226 F.3d at 884.

Morris states that he has a good disciplinary record, but acknowledges he was charged with attempting to escape in 1999. Morris was charged with violent crimes and had previously been convicted of violent crimes.[1] Requiring Morris to be handcuffed and shackled during movement within the Jail needs no further justification.

Nor do frequent and randomly-timed cell searches. "Shakedowns" are a necessary part of jail operations. *See Block v. Rutherford*, 468 U.S. 576, 588-91 (1984); *Wolfish*, 441 U.S. at 555-57. Morris would have to allege facts indicating that he was singled out for arbitrary harassment in order to claim that the "shakedowns" were a form of concealed punishment or retaliation.

It is less clear that there was a non-punitive purpose for confining Morris to his cell for 23 hours every day without privileges for nineteen months. It appears from the complaint that Morris was placed in a protective custody unit because he needed insulin injections, but was not permitted to come in contact with protective-custody detainees. Morris may be able to allege additional facts

---

[1] The court may take judicial notice of matters of public record in ruling on a motion under Rule 12(b)(6). *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000). Because the same standards govern the review of a prisoner's complaint under 28 U.S.C. § 1915A to determine whether it states a claim upon which relief may be granted, *see Wynn*, 251 F.3d at 591-92; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000), the court presumably may do so here. The publicly-accessible internet website maintained by the Illinois Department of Corrections shows that Morris was recently convicted of aggravated criminal sexual assault and armed robbery on charges brought in 1999, and had previously been convicted of robbery, armed robbery and unlawful restraint.

4

tending to show that these restrictions and deprivations were not reasonably related to a non-punitive purpose. As in the case of Morris's medical care claims, Morris must also name the defendant or defendants responsible and explain their roles in imposing these conditions of confinement on him.

## RETALIATION

Morris states that in January of 2002 he wrote an 18-page letter of complaint addressed to Ms. Zelda Whittler, a Cook County undersheriff, and his wife sent it by registered mail. In response, "this administration had a fit." Thereafter, members of the Special Emergency Response Team, or S.O.R.T., were assigned to escort Morris to and from his court appearances. According to Morris, S.O.R.T. officers are intimidating; they "will break you up in no time." Morris alleges that "[t]he S.O.R.T. officers told me more than once, '[CCDOC Assistant] Director Lyles don't like you, due to the fact that you went over his head.'"

The First Amendment guarantees Morris the right to petition governmental officials to seek redress of grievances. Although a detainee has no right to choose his guards, "otherwise permissible conduct can become impermissible when done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). Nevertheless, assuming that the S.O.R.T. officers were assigned to accompany Morris to signify Assistant Director Lyles' displeasure with Morris's constitutionally protected speech, what was Morris's injury? Morris does not allege that he was assaulted or threatened by the S.O.R.T. officers, or that he was deterred from filing any grievance, complaint or suit. Being told that Lyles disliked him hardly even qualified as harassment.

Persons having power over others are likely to resent those who complain about them to their superiors, and resentment may lead to retaliation, even if no more than a nasty glare or an angry word. If the person in power is a government official, the First Amendment is implicated, but not every act of retaliation amounts to a federal case. The venerable maxim of tort law, "*de minimis non curat lex*," "the law does not care about trifles," "place[s] outside the scope of legal relief the sorts of intangible injuries normally small and invariably difficult to measure that must be accepted as the price of living in society rather than made a federal case out of," and applies to

constitutional torts under 42 U.S.C. § 1983. *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993).

In the First Amendment context, if the alleged retaliatory conduct would have been unlikely to deter the exercise of free speech, it is considered *de minimis*. *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982); *Cannon v. Burkeybile*, No. 99 C 4623, 2002 WL 448988 (N.D.Ill. 2002)(Hart, J.). The test is objective in that it asks whether a person of "ordinary firmness" would be deterred; the sensitivities of the particular plaintiff are irrelevant.[2] What is *de minimis* depends to some extent on context; while a prisoner's vulnerability must be considered, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Canon*, 2002 WL 448988 at *5 (*quoting Thaddeus-X v. Blatter*, 175 F.3d 378, 396-98 (6th Cir. 1999). As alleged in the complaint, the substitution of "elite" S.O.R.T. officers for Morris's ordinary escort was a *de minimis* retaliation that did not amount to an actionable violation of his First Amendment rights.

## CONCLUSION

The complaint is dismissed for failure to state a claim upon which relief may be granted. Morris may file an amended complaint within thirty days of the date of this order. The complaint should state, with respect to each defendant, what Morris alleges that particular defendant did or failed to do that violated Morris's rights; he should not allege that "defendants" did something unless he is claiming that each defendant actually did the same thing at the same time. There is

---

[2] In *Bart*, 677 F.2d at 625, Judge Posner, writing for the Seventh Circuit, stated that retaliation "unlikely to deter a person of ordinary firmness" would not be actionable, indicating that the test is objective. However, *Power*, also written by Judge Posner (and citing *Bart*), suggests a subjective test: "[a]ny deprivation under color of law that is likely to deter the exercise of free speech ... is actionable ... if ... the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty." *Power*, 226 F.3d at 820. Although "circumstances" in its literal sense refers to matters outside the individual, it may be understood as including a plaintiff's individual susceptibility -- certainly a factor in whether the deterrent is effective. Neither *Bart* nor *Power* involved retaliation against incarcerated persons, but other circuits have adopted *Bart*'s "person of ordinary firmness" in inmate cases. *See Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000); *Thaddeus-X v. Blatter*, 175 F.3d 378, 396-98 (6th Cir. 1999); *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C.Cir. 1996), *rev'd on other grounds*, 523 U.S. 574 (1998). Because the test as articulated in *Bart* is clearly objective, while *Power* may be ambiguous and shows no intent to overrule or modify *Bart*, we treat the test as objective here.

no need for legal terms or legal argument, only "a short and plain statement of the claim" is required. Fed.R.Civ.P. 8(a)(2).

If Morris does not know the name of a defendant, he may name that person as "John Doe #1" or "Jane Doe #2" and provide as much identifying information as possible. Every person Morris wishes to sue must be named as a defendant in the caption of the complaint, including "John Does."

The clerk shall send Morris a copy of the amended complaint form and instructions for filing along with a copy of this order. The original, signed complaint must be filed together with one copy for the court and one copy for each defendant named. Copies may be either photocopies or conformed copies, that is, typed or hand-written word for word from the original. Morris may request additional copies of the amended complaint form from the Prisoner Correspondent. If Morris does not file an amended complaint in accordance with the instructions in this order, this suit may be dismissed.

JAMES B. MORAN
Senior Judge, U.S. District Court

June 13, 2003

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
Eastern Division

Ernest Morris

v.

Ernesto Velasco et al.

**JUDGMENT IN A CIVIL CASE**

Case Number: 03 C 2613

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that following initial review of the complaint as required by 28 U.S.C. Section 1915A, the complaint is dismissed without prejudice.

Michael W. Dobbins, Clerk of Court

Date: 6/13/2003

Willie A. Haynes, Deputy Clerk